IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA
f/u/b/o KOGOK CORPORATION,

     Plaintiff,

v.                                    Civil Action No. 1:13CV240
                                              (STAMP)

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,
FEDERAL INSURANCE COMPANY,
FIDELITY & DEPOSIT COMPANY
OF MARYLAND,
ZURICH AMERICAN INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY
and THE CONTINENTAL INSURANCE COMPANY,

     Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND DENYING DEFENDANTS' MOTION TO STAY ALL PROCEEDINGS**

I.  Procedural History

The plaintiff, United States of America f/u/b/o Kogok Corporation ("Kogok") filed this action against the defendants pursuant to the Miller Act, 40 U.S.C. § 3133, to recover payment for labor and materials it rendered to the FBI Biometric Technology Center, New Office Building and Central Utilities Plant Expansion (the "project") located in Clarksburg, West Virginia. Specifically, the complaint seeks a declaratory judgment from this Court finding that each defendant is liable to Kogok in the amount of $1,920,177.02.

After the defendants filed an answer and this Court entered a scheduling order in this matter, the defendants filed a motion for

partial summary judgment and to stay all proceedings. The defendants seek summary judgment against Kogok with respect to: (1) all claims that arose on or before October 31, 2013; (2) Kogok's claims for damages for delay; and (3) Kogok's claim for damages allegedly resulting from labor inefficiency. In support of their motion for partial summary judgment, the defendants argue that: (1) Kogok executed sworn releases and waivers where it expressly released all claims for damages arising from labor and materials relating to the project up to and including October 31, 2013; (2) Kogok expressly waived all claims for damages arising from delay to its performance; and (3) because Kogok admits that it is still both performing labor on the project and incurring labor inefficiency damages, it fails to comply with the Miller Act, which requires Kogok to provide notice of its labor inefficiency within ninety days after the last date it performed services. In addition to seeking partial summary judgment, the defendants also seek a stay of all proceedings until Kogok completes the work that underlies its claims and complies with its contractual obligations to support its claims.

Kogok filed a response in opposition arguing that: (1) the releases are invalid to release claims and proposed change orders submitted under the contract; (2) the "no damages for delay" clause should not be enforced against Kogok, especially when both Turner Construction Company ("Turner") and Bell Constructors, LLC ("Bell")

caused the delays and the government will compensate Turner for delays on the project; (3) Kogok's claim for labor inefficiencies is not premature; and (4) this case should not be stayed. The defendants filed a timely reply wherein they reasserted their arguments and countered Kogok's arguments.

For the reasons stated below, this Court grants the defendants' motion for partial summary judgment and denies the defendants' motion to stay proceedings.[1]

## II. Facts[2]

Turner Construction Company and the United States entered into a construction contract, in which Turner agreed to construct the project. Under the construction contract and Miller Act, Turner executed a labor and material payment bond with the defendants as joint and several sureties, which Turner delivered to the United States. After entering into the contract with the United States, Turner subcontracted the mechanical work on the project to Bell. Bell then entered into a subcontract agreement with Kogok, in which Kogok agreed to provide sheet metal, duct work, and related HVAC

---

[1]On July 23, 2014, this Court provided the parties with a letter setting forth its tentative rulings on this matter. This letter indicated that this Court granted the defendants' motion for partial summary judgment and deferred ruling on defendants' motion to stay. This order confirms the ruling on defendants' motion for partial summary judgment and, further, provides a definitive ruling on defendants' motion to stay.

[2]For the purposes of this opinion, this Court adopts, for the most part, the facts as set forth by Kogok in the complaint.

services for the project. Kogok was to provide such material and services for the price of $3.22 million.

The subcontract has several provisions at issue. First, Bell required Kogok to submit a "[o]n a monthly basis, [Kogok] shall submit to Bell its payment applications." ECF No. 29 Ex. 1, B. These payment applications, called "Release and Waiver Forms," provided the following:

> In consideration of the payment herewith made, the Undersigned [Kogok] does fully and finally release and waive any and all claims, causes of action, and/or lien rights against the Contractor [Bell] . . . for all costs, expenses, or losses of any nature or description which have arisen or are in any manner related to any aspect of the Work items from the date the Work items originally commenced to the date payment is made hereunder. This Release and Waiver applies to all claims, disputes, and other matters through the date this payment is made, including all claims for direct and indirect costs, productivity losses, delays, accelerations, ripple effects, field and home office overhead, equipment costs, and all other consequential and incidental costs, losses, and/or damages.

ECF No. 29-5 Ex. 1, D1. This language was contained in every Release and Waiver form Kogok filed monthly for payment. It consecutively filed these waivers twenty-six times, with the above language appearing in all of them.

Second, in addition to the payment provision, the contract also contained a Change Order provision and Disputes provision. The Change Order provision provided for if either party sought to amend the contract or project specifications. The Change Order provision states in relevant part that if Kogok and Bell are unable

4

to agree on adjustments to the contract by change orders, "Kogok shall proceed with the change as directed by Bell and preserve its right to an equitable adjustment hereto pursuant to the Disputes provision set forth herein.  The Subcontractor shall be bound by Bell's adjustments if the Subcontractor fails to strictly comply with the Disputes provision."  ECF No. 29 Ex. 1, B.  Third, as referenced in the Change Order provision, the contract also maintains a Disputes provision that states, "[Kogok] shall give Bell written notice of all claims involving Bell for time extensions and additional costs within seven (7) days of the event giving rise to the claim; otherwise, such claim(s) shall be deemed forever waived."

Finally, the contract contained a "no damages for delay" clause, which states

The clause states in relevant part:

NO DAMAGES FOR DELAY:  The Subcontractor [Kogok] expressly agrees not to make, and hereby waives, any and all claims for damages on account of any delay, obstruction, or hindrance for any cause whatsoever, including but not limited to the aforesaid cause, and agrees that its sole right and remedy in the case of any delay, obstruction or hindrance shall be an extension of time fixed for completion of the Work [unless and to the extent that Bell recovers delay damages from the Owner which are directly allocable to the Subcontractor [Kogok]].

ECF No. 29 Ex. 1, B.  Bell and Kogok agreed to the contract with the above terms and conditions.  No accusations or facts indicating foul play exist regarding the parties' agreement.

However, as the project progressed and Kogok rendered its services, the government unilaterally extended the project deadline to February 27, 2015, citing issues with Turner's production of information and paperwork.

As a result of the delay, Kogok asserts that it is currently in the process of rendering the labor and materials for the project required under the subcontract, but it has received no payment for such work. Specifically, Kogok asserts that unpaid amounts for labor and materials exist for November 2012, December 2012, February 2013, and May 2013. Further, Kogok asserts that Bell has not paid it for additional labor and materials rendered for the project outside of the contract's scope of work that it had submitted requests for change orders. In total, Kogok is seeking recovery from the defendants in the amount of $1,920,177.02, asserting that it is entitled to payment of this sum under the payment bond and the Miller Act.

## III. <u>Discussion</u>

A. <u>Motion for Partial Summary Judgment</u>

The defendants argue that summary judgment should be granted on three of Kogok's claims. Specifically, they seek partial summary judgment against Kogok with respect to: (1) all Kogok's claims that arose on or before October 31, 2013; (2) Kogok's claim for damages for delay; and (3) Kogok's claim for labor inefficiency.

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely
> disputed must support the assertion by:
>     (A)  citing to particular parts of materials in the
> record, including depositions, documents, electronically
> stored information, affidavits or declarations,
> stipulations . . . admissions, interrogatory answers, or
> other materials; or
>     (B)  showing that the materials cited do not
> establish the absence or presence of a genuine dispute,
> or that an adverse party cannot produce admissible
> evidence to support the fact.

Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears
the initial burden of showing the absence of any genuine issues of
material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23
(1986).  "The burden then shifts to the nonmoving party to come
forward with facts sufficient to create a triable issue of fact."
Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir.
1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  However, as the
United States Supreme Court noted in Anderson, "Rule 56(e) itself
provides that a party opposing a properly supported motion for
summary judgment may not rest upon the mere allegations or denials
of his pleading, but . . . must set forth specific facts showing
that there is a genuine issue for trial."  Id. at 256.  "The
inquiry performed is the threshold inquiry of determining whether
there is the need for a trial -- whether, in other words, there are
any genuine factual issues that properly can be resolved only by a
finder of fact because they may reasonably be resolved in favor of

either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

1. Kogok's Claims that Arose on or Before October 31, 2013

In their motion for summary judgment, the defendants first argue that Kogok's sworn releases and waivers equate to a waiver of all Kogok's claims arising on or before October 31, 2013. Specifically, the defendants claim that Kogok executed twenty-six sworn waivers and releases that applied to all claims. This was an explicit requirement of the agreement between the parties. Thus,

because Kogok waived its claims, the defendants argue that the claims arising on or before October 31, 2013 are waived.

In response, Kogok contends that adopting the defendants' interpretation of the contract creates ambiguities between the "Change Orders"[3] and "Disputes"[4] provisions. In particular, Kogok asserts that its contract allows Kogok to preserve any claims or adjustments despite filing the affidavits. Thus, Kogok argues that when looking at the contract in its entirety, the defendants' interpretation renders the Dispute and Change Order provisions meaningless. For the reasons stated below, this Court agrees with the defendants' argument and grants its motion for partial summary judgment on this claim.

When reading and interpreting contract provisions, the court's purpose is to give full force and effect to the expressed or implied intentions of the contracting parties, if such can be discerned. Truong Xuan Truc v. United States, 212 Ct. Cl. 51, 66, 1976 WL 905 (1976) (quoting Massachusetts Port Auth. v. United

---

[3]As stated above, the provision provides that "Kogok shall proceed with the change as directed by Bell and preserve its right to an equitable adjustment hereto pursuant to the Disputes provision set forth herein. The Subcontractor shall be bound by Bell's adjustments if the Subcontractor fails to strictly comply with the Disputes provision." ECF No. 29 Ex. 1, B.

[4]As referenced in the Change Order provision, the Disputes provision that states: "[Kogok] shall give Bell written notice of all claims involving Bell for time extensions and additional costs within seven (7) days of the event giving rise to the claim; otherwise, such claim(s) shall be deemed forever waived."

States, 456 F.2d 782, 784, 197 Ct. Cl. 721, 726 (1972)); see also SCM Corp. v. United States, 675 F.2d 280, 283, 230 Ct. Cl. 199, 203 (1982); Honeywell Inc. v. United States, 661 F.2d 182, 186, 228 Ct. Cl. 591, 596 (1981); Dynamics Corp. of America v. United States, 389 F.2d 424, 429, 182 Ct. Cl. 62, 72 (1968). Generally, a release under a contract is interpreted the same as any other contract term or provision. Metric Constructors, Inc. v. United States, 314 F.3d 578, 579 (Fed. Cir. 2002); see also Restatement (Second) of Contracts § 284 cmt. c (1981) (providing that releases face the same rules of interpretation as generally apply to contracts). However, in the government contract context, "exceptions to releases of claims are strictly construed against government contractors." Minqus Constructors Inc. v. United States, 812 F.2d 1387, 1394 (Fed. Cir. 1987). Further, when a contractor executes a complete release of claims, it reflects the contractor's "unqualified acceptance and agreement with its terms and is binding on both parties." Clark Mechanical Contractors, Inc. v. United States, 5 Cl. Ct. 84, 86 (1984). When a contractor "has the right to reserve claims from the operations of release, but fails to exercise that right . . . it is neither improper nor unfair, absent some vitiating or aggravated circumstance, to preclude the contractor from maintaining a suit based on events which occurred prior to" executing the release. Id. (citing Inland Empire

10

<u>Builders, Inc. v. United States</u>, 424 F.2d 1370, 1376 (1970); <u>Metric</u>
<u>Constr. Co. v. United States</u>, 1 Cl. Ct. 383, 396 (1983)).

Under the facts of this case, Kogok's argument falls short of
convincing this Court to deny defendants' motion.  The terms of the
subcontractor agreement between Bell and Kogok requires Kogok to
provide Bell a "Release and Waiver" as part of its payment
application for services rendered.  In this Release and Waiver
form, it explicitly states the following:

> In consideration of the payment herewith made, the
> Undersigned [Kogok] does *fully and finally release and*
> *waive any and all claims*, causes of action, and/or lien
> rights against the Contractor [Bell] . . . for all costs,
> expenses, or losses of any nature or description which
> have arisen or are in any manner related to any aspect of
> the Work items from the date the Work items originally
> commenced to the date payment is made hereunder.  *This*
> *Release and Waiver applies to all claims, disputes, and*
> *other matters through the date this payment is made*,
> including all claims for direct and indirect costs,
> productivity losses, delays, accelerations, ripple
> effects, field and home office overhead, equipment costs,
> and all other consequential and incidental costs, losses,
> and/or damages.

ECF No. 29-5 Ex. 1, D1 (emphasis added).  As seen in this language
from the Release and Waiver form, it explicitly provides a full and
final waiver of all claims up to the date of the respective
payment.  Further, Kogok filed twenty-six consecutive waivers under
oath from June 15, 2011 through October 31, 2013.

As clear as these above provisions appear, Kogok asserts that
they are both ambiguous and conflict with Change Order and Disputes
provisions.  Kogok refers to the Dispute provisions and Change

Order provisions, claiming that the Release and Waiver requirement renders those provisions useless because all claims are waived by filing the Release and Waiver requirement. However, this argument seems to ignore the fact that Kogok could dispute the charges rather than waive them. Or, it could have modified the Releases and Waivers for what claims would or would not be waived, as it did later. See ECF No. 29 Ex. 1-F. This Court fails to see either the conflict or ambiguity that Kogok claims is so readily apparent.

This civil action mirrors the situation in MAFCO Elect. Contractors, Inc. v. Turner Const. Co., 357 F. App'x 395 (2d. Cir. 2009). In MAFCO, the plaintiff, an electrical subcontractor, alleged that the various waivers it signed regarding claims did not apply due to ambiguities and conflicting contract language. Id. at 396. However, the court there rejected plaintiff's arguments, because the plaintiff signed "clear, unconditional release and waiver" forms during the course of the project. Id. Specifically, the forms provided language similar to the case at hand, including clauses such as "the Subcontractor recognizes that there is no basis for any such claim in the future," or waiving all rights to seek payment adjustments "for any reason or matter arising out of or related to matters occurring or existing on or before the date hereof." Id. Further, the plaintiff in MAFCO filed almost twenty-four of these forms that contained the waiver language. Because

these waivers were so clear, unambiguous, and explicit, the court rejected plaintiff's arguments and found for the defendant.

Similar to <u>MAFCO</u>, Kogok here filed forms with similarly clear and explicit language barring claims. Further, like <u>MAFCO</u>, where the plaintiff filed numerous forms containing waivers, here Kogok filed twenty-six forms that waived all claims up to the date of payment provided on each form. Because these waivers contain neither ambiguities nor conflicts, this Court rejects Kogok's argument. Thus, this Court grants defendants' motion for partial summary judgment on its first claim.

2. <u>Kogok's Claim for Delay Damages</u>

The defendants next argue that this Court should grant their motion for summary judgment because the subcontractor agreement contained a "no damages for delay" clause. The clause states in relevant part:

> NO DAMAGES FOR DELAY: The Subcontractor [Kogok] expressly agrees not to make, and hereby waives, any and all claims for damages on account of any delay, obstruction, or hindrance for any cause whatsoever, including but not limited to the aforesaid cause, and agrees that its sole right and remedy in the case of any delay, obstruction or hindrance shall be an extension of time fixed for completion of the Work [unless and to the extent that Bell recovers delay damages from the Owner which are directly allocable to the Subcontractor [Kogok]].

ECF No. 29 Ex. 1, B. As provided in the facts of this case, the government unilaterally extended the project deadline, setting February 27, 2015, as the new deadline for the project. However,

because the agreement contained this clause, defendants argue that Kogok cannot recover damages for added construction and labor costs that resulted from delays in the project.

In response, Kogok argues that language in its agreement provides that it is entitled to receive damages for the delays if Bell also recovers delay damages from the contractor. Here, Kogok claims that Bell will recover delay damages, and because of this, Kogok is now entitled to such damages. Further, Kogok asserts that the no damages for the delay clause is unconscionable, and that Kogok did not contemplate this clause in the contract.

Under the Miller Act, contractors for government projects must furnish payment bonds when the contract exceeds $100,000 in value. 40 U.S.C. § 3131(b). The bonds protect subcontractors and suppliers that contribute to the federal project because federally owned lands and buildings are exempt from liens that may normally be used under state law. United States f/u/b/o Sherman v. Carter, 353 U.S. 210, 216 (1957). Although the Miller Act should be liberally construed and applied, a surety for the bonds generally is not liable for damages that the prime contractor causes. United States f/u/b/o Pertun Construction Company v. Harverster's Group, Inc., 918 F.2d 915 (11th Cir. 1990); United States f/u/b/o Edward E. Morgan Co., Inc. v. Maryland Casualty Co., 147 F.2d 423 (5th Cir. 1945); L.P. Freidstedt Co. v. U.S. Fireproofing Co., 125 F.2d 1010 (10th Cir. 1942). Further, "'[a]s a general matter, a

surety's liability is defined by the liability of the underlying contract.'" HPS Mechanical, Inc. v. JMR Construction Corp., No. 11-CV-026000, 2014 WL 3845176 (N.D. Cal. Aug. 1, 2014) (quoting Morganti Nat'l, Inc. v. Petri Mechanical Co., Inc., No 98-0309, 2004 WL 1091743, at *1 (D. Conn. May 13, 2004)). More importantly, a contract clause that affects the timing of recovery or the right to recovery under the Miller Act would contradict the Miller Act. United States ex rel. Walton Technology v. Westar Engineering, 290 F.3d 1199, 1207 (9th Cir. 2002). However, no damages for delay clauses does not contradict the Miller Act because they affect the measure of recovery, not the timing of it. Id.; Morganti, No 98-0309, 2004 WL 1091743, at *11. Thus, under the Miller Act, such clauses do not contradict the Miller Act and are generally valid.

As stated above, Kogok asserts that the no damages for delay clause is unconscionable and thus unforeceable, but not because of the Miller Act. Rather, Kogok argues that West Virginia law has not determined the enforceability of such clauses, and that other jurisdictions have found them invalid. Further, Kogok claims that West Virginia contract law would generally view such clauses as unenforceable or unconscionable.

It is true that West Virginia has not determined the enforceability of no damages for delay clauses. However, many states hold that such clauses are valid and enforceable, so long as they meet ordinary rules governing validity of contracts. See,

e.g., <u>Tricon Co. v. Lafarge North America, Inc.</u>, 186 P.3d 155 (Colo. 2008); <u>Green Intern., Inc. v. Solis</u>, 951 S.W.2d 384 (Tex. 1997); <u>United States f/u/b/o Williams Elec. Co., Inc. v. Metric Constructors, Inc.</u>, 480 S.E.2d 447 (S.C. 1997); <u>State Highway Admin. v. Greiner Engineering Sciences, Inc.</u>, 577 A.2d 363 (Md. 1990); <u>Corinno Civetta Const. Corp. v. City of New York</u>, 493 N.E.2d 905 (N.Y. 1986); <u>Hansen v. Covell</u>, 24 P.2d 722 (Cal. 1933). More importantly, West Virginia law provides that "a valid written agreement using plain and unambiguous language is to be enforced according to its plain intent and should not be construed." <u>Toppings v. Rainbow Homes, Inc.</u>, 490 S.E.2d 817, 822 (W. Va. 1997); <u>see also</u> Syl. Pt. 2, <u>Orteza v. Monongalia County General Hospital</u>, 318 S.E.2d 40 (1984); Syl. Pt. 1, <u>Cotiga Development Co. v. United Fuel Gas Co.</u>, 128 S.E.2d 626 (W. Va. 1962). Further, in order to demonstrate that a term of a contract is unconscionable and thus unenforceable, the proponent must prove that the term is both procedurally and substantively unconscionable. <u>Brown v. Genesis Healthcare Corp.</u>, 729 S.E.2d 217 (W. Va. 2012). Procedural unconscionability refers to inequities or unfairness in the bargaining process and formation of the contract, while substantive unconscionability means the term is so unfair to one party as to be one-sided. <u>Id.</u>; <u>see also</u> Syl. Pts. 1, 19, <u>Brown ex rel. Brown v. Genesis Healthcare Corp.</u>, 724 S.E.2d 250 (W. Va. 2011).

Under the law provided above, this Court disagrees with Kogok's argument. First, it appears that many jurisdictions do enforce no damages for delay causes like the one in dispute here. Second, no indications exist that West Virginia law would substantially oppose the enforcement or validity of a no damages for delay clause. Rather, West Virginia law gives contracts their full effect based on their plain meaning. Finally, no indications of unconscionability exist here. The parties are both commercially sophisticated and members of the same industry. Looking at the facts present, no hint of foul play or inequities exists. Indeed, the language of the clause explicitly provides that Kogok can recover damages for delay if the damages are both recovered from the government and directly allocable to Kogok. The language of their contract is clear, and the clause appears valid and enforceable. Thus, this Court grants defendant's motion for partial summary judgment on this claim.[5]

---

[5]This Court also notes that Kogok claims it is entitled to damages because Bell will receive damages for the contractor's delay. However, under the facts of this case, it appears that Bell has not received any compensation for the delay. Under the government's unilateral extension for delay, the form explicitly states: "This Contract time extension . . . is being granted as a non-compensable delay. Therefore, the Contract price is unchanged by this Modification." ECF No. 29 Ex. 1, C.

3. <u>Kogok's Claim for Labor Inefficiency</u>

Finally, defendants assert that Kogok's claim regarding labor impacts and inefficiencies is premature under the Miller Act. Specifically, defendants argue that Kogok has yet to show its "last date" for labor provided, as required under the statute. Because of this, defendants claims that Kogok cannot file a notice of claim for labor inefficiency costs until ninety days after the last date of labor furnished, which it claims has yet to be declared. In response, Kogoks argue that it filed a notice of claim within ninety days, and that Kogok is complying with the Miller Act's requirements. Further, Kogok points to case law that it claims justifies its filing a notice of claim.

Under the Miller Act, a right to civil action exists if a person who furnishes materials or labor under a contract where a § 3131 payment bond is furnished

> has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

40 U.S.C. § 3133(b)(1) (2012). Further, the statute also provides that a person who has a direct contractual relationship with a subcontractor but not contractor may bring a civil action on the payment bond by giving the contractor notice within ninety days after the date when the last of the labor or materials were

18

provided.  Id. § 3133(b)(2) (2012); <u>United States ex rel. Water Works Supply Corp. v. George Hyman Constr. Co.</u>,131 F.3d 28, 31-32 (1st Cir. 1997).  As provided in case law interpreting the statute, "the measuring date will be the date when the last material is furnished under the last contract."  <u>Noland Co. v. Allied Contractors, Inc.</u>, 273 F.2d 917, 920 (4th Cir. 1959); <u>see also Water Works Supply Corp.</u>, 131 F.3d at 30; <u>United States ex rel. A & M Petroleum, Inc. v. Santa Fe Engineers, Inc.</u>, 822 F.2d 547, 548 (5th Cir. 1987).

The issue here is whether a last date exists regarding Kogok's labor and services furnished so as to render its notice of claim for labor inefficiencies and costs timely.  Under the facts here, that date does not exist.  Documents in the record show that Kogok's notice was premature.  Specifically, in a letter dated March 24, 2014, where Kogok responded to Bell's inquiries regarding Kogok's notice for claim, Kogok referred to its work on the project as "ongoing," that it is "continuing to suffer labor costs," and that it was supposed to be "on the project" until at least June 17, 2014.  Despite this, Kogok filed its notice of claim on October 16, 2013.  Based on the record before this Court, it appears no "final date" has been provided yet that would justify filing a notice of claim.

However, Kogok does cite to case law that it claims refutes this interpretation of the Miller Act.  Kogok looks to <u>United

<u>States f/u/o Honeywell, Inc. v. A & L Mechanical Contractors, Inc.</u>, where the court held for the plaintiff who filed a notice of claim before the last date of its participation in the project. 677 F.2d 383 (4th Cir. 1982). There, a plaintiff subcontractor provided services and had a balance owed to it. Then, the plaintiff filed a notice regarding those claims in October and November 1979. <u>Id.</u> at 385. However, its final date regarding the project was January 22, 1980. <u>Id.</u> The plaintiff argued that although it filed the notices before its final project date, the notice still applied to claims prior to October 1979. <u>Id.</u> The court in <u>Honeywell</u> found the October 1979 notice to be timely under a liberal interpretation of the Miller Act. It reasoned that if a "subcontractor is delinquent in making progress payments, its subcontractor, the claimant, should not be required to continue work on a prolonged project without progress payments." <u>Id.</u> Further, the court found that "[t]he November 1979 notice did not claim anything <u>*with respect to work to be done*</u> or materials supplied thereafter; it was within ninety days after the labor or material 'for which such claim is made' had been furnished." <u>Id.</u> (emphasis added). Because the court believed that principal purpose of the Miller Act is to protect contractors and subcontractors on federal construction projects, the Miller Act should be interpreted liberally toward that end. <u>Id.</u> at 386. Thus, the court in <u>Honeywell</u> found the

notice to be timely despite it being premature under a stricter interpretation.

Although persuasive, this Court finds several distinctions between this civil action and the Honeywell case. Unlike in Honeywell, where the subcontractor's claim involved already provided services and materials, here Kogok's claim involving the "impact and inefficiencies" on labor costs lacks definiteness. Indeed, Kogok's response to Bell's inquiries regarding the "impact and inefficiencies" demonstrates this lack of definiteness, as opposed to what was present in Honeywell. In Kogok's response to Bell's inquiries regarding the claim, it states:

> Bell's request for information regarding [the notice of claim regarding impact and inefficiencies on labor] is premature, especially considering that the Project is ongoing, and that . . . Kogok is scheduled to be on the project through June 17, 2014 . . . Accordingly, any information provided prior to the completion of Kogok's labor activities on the Project would be invalid and meaningless.

ECF No. 29 Ex. 1, H. As seen in the quote, Kogok is referring to the impact and inefficiencies claim. It even admits that the impact and inefficiencies claims are premature in the sense that the total amount for this claim is yet to be determined. The services are still being rendered.

This contrasts with the situation in Honeywell, where past services and materials were in dispute, not an abstract and still not fully defined amount of impacts and inefficiencies. Further, unlike Honeywell, where the plaintiff sought damages for past

services rendered, here Kogok is filing a notice for past and forthcoming costs related to its labor impact and inefficiencies claim. Although the Miller Act in its entirety should be construed liberally, the statute's ninety day notice for claims provision is exempted from such construction. Pepper Burns Insulation, Inc. v. Artco Corp., 970 F.2d 1340 (4th Cir. 1992); see United States ex rel. John D. Ahern Co., Inc. v. J.F. White Contracting Co., 649 F.2d 29, 31 (1st Cir. 1981); United States ex rel. General Dynamics Corp. v. Home Indemnity Co., 489 F.2d 1004, 1005 (7th Cir. 1973); see also Honeywell, 677 F.2d at 386 ("strict enforcement of [the notice] requirement is necessary"). Therefore, this Court grants defendants' motion for summary judgment regarding the notice of claim because Kogok's notice of claims was premature.

B.  Motion to Stay

In addition to seeking partial summary judgment, the defendants request that this Court stay all proceedings until such time that Kogok has completed the work underlying its claims and complies with its contractual obligations. In support of this argument, the defendants assert that the largest element of Kogok's claim arises from alleged labor inefficiency damages, which Kogok claims it is still incurring. Accordingly, the defendants argue that because Kogok cannot provide any valid or meaningful information as to this claim until it completes its labor activities, the defendants request that the action be stayed.

It is well settled law that federal district courts possess the ability to, under their discretion, stay proceedings before them when the interests of equity so require. <u>Williford v. Armstrong World Indus., Inc.</u>, 715 F.2d 124, 125 (4th Cir. 1983). Although neither the Federal Rules of Civil Procedure nor statute have expressly promulgated such power, it is inherent within the courts' "general equity powers and in the efficient management of their dockets to grant relief." <u>Id.</u> Still, this power is not unfettered. A party seeking a stay must sustain the heavy burden of justifying it by showing that clear and convincing circumstances support a stay. <u>Landis v. North American Co.</u>, 299 U.S. 248, 254-55 (1936). Further, the Court must weigh the equities when deciding whether to grant a stay, and must also consider the interests of judicial economy and the desire for "the orderly and expeditious disposition of cases." See <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 630 (1962).

In this instance, the defendants' proffered reason for this Court to grant a stay of the proceedings is no longer a valid justification for a stay based on the findings above concerning the defendants' motion for partial summary judgment. The defendants request the stay based on Kogok's claim for labor inefficiency. As stated above, however, this Court granted the defendants' motion for summary judgment as to Kogok's claim for labor inefficiency. Accordingly, no clear and convincing justification for a stay of

23

proceedings remains, and thus, this Court must deny defendants'
motion to stay the proceedings.

## V.  Conclusion

For the reasons stated above, the defendants' motion for
partial summary judgment is GRANTED, and the defendants' motion to
stay all proceedings is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum
opinion and order to counsel of record herein.

DATED:    September 23, 2014


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE