IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA
f/u/b/o KOGOK CORPORATION,

     Plaintiff,

v.                                  Civil Action No. 1:13CV240
                                          (STAMP)

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,
FEDERAL INSURANCE COMPANY,
FIDELITY & DEPOSIT COMPANY OF MARYLAND,
ZURICH AMERICAN INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY,
THE CONTINENTAL INSURANCE COMPANY,
and BELL CONSTRUCTORS, LLC,

     Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING SURETY DEFENDANTS' MOTION TO DISMISS,
GRANTING DEFENDANT BELL CONSTRUCTORS, LLC'S
MOTION FOR SUMMARY JUDGMENT,
AND DENYING AS MOOT PLAINTIFF'S MOTION TO
AMEND THE AMENDED SCHEDULING ORDER**

I.  Procedural History

The plaintiff ("Kogok") filed this action under the Miller Act, 40 U.S.C. § 3133, to recover payment for labor and materials it rendered to the FBI Biometric Technology Center, New Office Building and Central Utilities Plant Expansion ("the project") located in Clarksburg, West Virginia. Turner Construction Company ("Turner") and the Government entered into a contract, in which Turner agreed to construct the project. Turner entered into a subcontract agreement with Bell Constructors, LLC ("Bell") in which Bell agreed to perform the mechanical work on the project. Bell

then entered into a subcontract agreement with Kogok, in which Kogok agreed to provide sheet metal, ductwork, and related HVAC services to the project for $3.22 million. The defendants Travelers Casualty and Surety Company of America, Federal Insurance Company, Fidelity & Deposit Company of Maryland, Zurich American Insurance Company, Liberty Mutual Insurance Company, and the Continental Insurance Company ("the sureties" or "surety defendants") issued a payment bond on behalf of Turner, the general contractor, for the project.

The surety defendants previously filed a motion for partial summary judgment and to stay all proceedings. More specifically, the surety defendants sought summary judgment against Kogok with respect to: (1) all claims arising on or before October 31, 2013; (2) Kogok's claims for damages for delays; and (3) Kogok's claim for damages resulting from labor inefficiency. This Court granted the surety defendants' motion for partial summary judgment but denied their motion to stay all proceedings. ECF No. 61.

Later, Kogok filed a motion to amend the complaint and a motion to amend the scheduling order. This Court granted Kogok's motion to amend the complaint, directed Kogok to file a reformulated complaint,[1] and deferred ruling on Kogok's motion to

_____

[1]This Court permitted Kogok to file an amended complaint because Kogok wanted to preserve certain claims for appeal or reconsideration purposes. For those purposes, this Court permitted Kogok to file an amended complaint. In addition to an amended complaint, this Court directed Kogok to file a reformulated

amend the scheduling order. ECF No. 77. Regarding the reformulated complaint, Kogok added Bell as a defendant and asserted several claims against Bell.[2] Moreover, under Counts I through VI, Kogok revised its allegations and relief sought against the surety defendants. After Kogok filed its reformulated complaint, the surety defendants filed a motion to dismiss the reformulated complaint, and Bell filed a motion for summary judgment. ECF Nos. 88 and 86, respectively.

For the reasons set forth below, the surety defendants' motion to dismiss and Bell's motion for summary judgment are both granted. Furthermore, Kogok's motion to amend/correct the scheduling order is denied as moot.

## II. <u>Facts</u>

Turner and the Government entered into a construction contract. Turner executed a labor and material payment bond with the surety defendants as joint and several sureties, which Turner

---

complaint so as to clarify the "actual" remaining claims and allegations that took into account this Court's prior rulings. ECF No. 77. The parties future filings and pleadings, including those at issue in this order, pertain to the allegations set forth in the reformulated complaint (ECF No. 81).

[2]In the reformulated complaint, Kogok asserts six counts (Counts VII through XII) against Bell. Those counts are the following: Count VII, breach of contract for improperly rejecting payment applications; Count VIII, breach of contract for requiring improperly broad waivers; Count IX, breach of contract for preventing Kogok from preserving properly asserted claims; Count X, breach of contract by requiring Kogok to perform change order work; Count XI, unjust enrichment by Bell; and Count XII, quantum meruit by Bell.

delivered to the Government.  After entering into the contract with the Government, Turner subcontracted the mechanical work on the project to Bell.  Bell then entered into a subcontract agreement with Kogok, in which Kogok agreed to provide sheet metal, ductwork, and related HVAC services for the project.  Kogok was to provide such material and services for $3.22 million.  ECF No. 81 Ex. B.

At issue now are certain filings by Kogok and three provisions of the subcontract agreement between Bell and Kogok.  In particular, the three provisions of the subcontract agreement are the "Release and Waiver" forms, the "Dispute" provision, and the "No Damages for Delay" clause.  Regarding the Release and Waiver forms, Bell required Kogok to submit payment applications to Bell every month.  ECF No. 87 Ex. 3.  Pursuant to the subcontract agreement, each payment application had to be submitted with a Release and Waiver form.  The Release and Waiver forms each state the following:

> In consideration of the payment herewith made, the Undersigned [Kogok] does fully and finally release and waive any and all claims, causes of action, and/or lien rights against the Contractor [Bell] . . . for all costs, expenses, or losses of any nature or description which have arisen or are in any manner related to any aspect of the Work items from the date the Work items originally commenced to the date payment is made hereunder.  This Release and Waiver applies to all claims, disputes, and other matters through the date this payment is made, including all claims for direct and indirect costs, productivity losses, delays, accelerations, ripple effects, field and home office overhead, equipment costs, and all other consequential and incidental costs, losses, and/or damages.

ECF No. 87 Ex. 4. The record shows that Kogok consecutively submitted 26 Release and Waiver forms, which were each executed and contained the language quoted above.

The subcontract agreement also contained a Disputes provision, which relates to any change orders placed pursuant to the Change Order provision. The Change Order provision states in relevant part that if Kogok and Bell are unable to agree on adjustments to the contract by change orders, "[Kogok] shall proceed with the change as directed by Bell and preserve its right to an equitable adjustment hereto pursuant to the Disputes provision set forth herein. [Kogok] shall be bound by Bell's adjustments if [Kogok] fails to strictly comply with the Disputes provision." ECF No. 87 Ex. 3. As referenced in the Change Order provision, the Disputes provision states that "[Kogok] shall give Bell written notice of all claims involving Bell for time extensions and additional costs within seven (7) days of the event giving rise to the claim; otherwise, **such claim(s) shall be deemed forever waived**." Id. (emphasis added). Any amounts that Kogok seeks to recover for any claims "is limited to the amounts that Bell may recover from the [Government] on Kogok's behalf." Id. Moreover, the "Government's" decision regarding [Kogok's] claim shall be final and conclusive as between Bell and [Kogok], and **Bell shall have no liability to [Kogok] for such claims**." Id. (emphasis added).

The final provision of the subcontract agreement at issue is the "No Damages for Delay" clause. That clause states in relevant part:

> NO DAMAGES FOR DELAY: The Subcontractor [Kogok] expressly agrees not to make, and hereby waives, any and all claims for damages on account of any delay, obstruction, or hindrance for any cause whatsoever, including but not limited to the aforesaid cause, and agrees that its sole right and remedy in the case of any delay, obstruction or hindrance shall be an extension of time fixed for completion of the Work [unless and to the extent that Bell recovers delay damages from the Owner which are directly allocable to the Subcontractor [Kogok]].

<u>Id.</u> Bell and Kogok agreed to the subcontract agreement with the above terms and conditions.

In addition to the contract provisions quoted above, Kogok filed several "Certified Claim" forms. The Certified Claim forms refer to the proposed change order requests ("PCO") that Kogok submitted, which it claims relate to work done outside of the scope of the contract. Each of those claims contains the following certification by Kogok:

> I hereby certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; **that the amount requested accurately reflects the minimum contract adjustments for which [Kogok] believes the Government is liable**; and that I am duly authorized to certify the claim on behalf of [Kogok].

ECF No. 87 Ex. 8 (emphasis added). Kogok states that it is still working on the project. ECF No. 81 ¶ 16 (stating that Kogok "is

currently in the process of winding down its activities on the [p]roject.").

Kogok now claims that Bell and the surety defendants owe Kogok money for its work on the project. Kogok believes that Bell owes it $68,739.45 for work completed under the subcontract agreement pursuant to Pay Applications 43 through 46. ECF No. 81 Ex. 3. Those Pay Applications were submitted from November 2014 to April 2015. Id. In addition to the Pay Applications, Kogok submitted several PCOs for labor that it claims fell outside the contractual scope of work. Those PCOs show an additional $2,075,976.45 that Kogok claims Bell has withheld. ECF No. 81 ¶ 18. As to the surety defendants, Kogok seeks not less than $174,012.59 from each surety defendant. The amount sought from the surety defendants is based on Pay Applications 43 through 46, certain PCOs,[3] and alleged delays and impacts to Kogok that occurred after October 31, 2013. Previously, Kogok submitted a Notice of Claim to Turner, which listed claims for past payments up to October 31, 2013. ECF No. 89 Ex. 6. However, that Notice of Claim did not state claims for the Pay Applications or the PCOs that are currently at issue.

---

[3]PCOs 60, 62,64, 67, and 68 allegedly apply to the amounts that the surety defendants owe Kogok.

III.  <u>Applicable Law</u>

A.   <u>Motion to Dismiss</u>

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pled facts contained in the complaint as true.  <u>Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc</u>, 591 F.3d 250, 255 (4th Cir. 2009).  However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes."  <u>Id.</u> (citing <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)).  This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments."  <u>Wahi v. Charleston Area Med. Ctr., Inc.</u>, 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case.  5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (3d ed. 1998).  The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact.  <u>Id.</u>  For purposes of the motion to dismiss, the complaint is construed in

the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). <u>Id.</u> § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Nemet Chevrolet</u>, 591 F.3d at 256 (quoting <u>Iqbal</u>, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

B.    <u>Motion for Summary Judgment</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
(B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In _Celotex_, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." _Celotex_, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. _See_ _Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 587 (1986).

IV. _Discussion_

At issue now are the surety defendants' motion to dismiss, Bell's motion for summary judgment, and Kogok's motion to amend the scheduling order. Those motions are discussed below in the order presented.

A. _The Surety Defendants' Motion to Dismiss_

In their motion to dismiss, the sureties argue that Kogok failed to comply with the notice requirements under the Miller Act. In support, the sureties point out that the amounts under the PCOs and Pay Applications at issue were never mentioned in the Notice of Claim that Kogok submitted to Turner. In addition, 90 days have passed since Kogok provided any materials or services relating to its claims. Therefore, Kogok has not complied with the notice requirement, and thus the sureties argue that its claims against

11

them should be dismissed.  The sureties also argue that Kogok failed to comply with the requirements of the reformulated complaint.  In particular, Kogok allegedly reasserted claims regarding delays and impacts associated with the project.  The sureties argue that such claims were dismissed pursuant to this Court's order granting partial summary judgment.  For those reasons, the sureties believe that the claims against them must be dismissed.

Contrary to the claims of the sureties, Kogok argues that the sureties had actual knowledge, through depositions and filings, of Kogok's claims under the Miller Act.  Further, because the Pay Applications were submitted to Bell, and then to Turner by Bell, the sureties should have received additional notice of Kogok's claims.  Next, Kogok believes that the exception to the No Damages for Delay clause will take effect when the Government compensates Turner for the delays experienced.  Because the Government may compensate Turner, Kogok believes it is premature to dismiss its claims.

Based on the arguments presented above, the surety defendant's motion to dismiss centers around two issues: (1) whether Kogok complied with the "notice" requirement under the Miller Act, and (2) whether Kogok reasserted claims for damages due to delays, which this Court previously ruled on.  See ECF No. 61.  Those issues are discussed below in the order presented.

1.  Notice under the Miller Act

The Miller Act allows a subcontractor the right to bring a civil action on a payment bond furnished by the contractor, despite having no direct contractual relationship with the contractor. 40 U.S.C. § 3133(b)(2). A party bringing such an action must give "written notice to the contractor **within 90 days** from the date on which the person [here, Kogok]" furnished the last of the labor or materials for which the claim is made. Id. (emphasis added). That provision of the Miller Act further states that such an action "must state with substantial accuracy the amount claimed and the name of the party to whom" the labor or materials were furnished. Id. The written notice must be served "by any means that provides written, third-party verification of delivery" or "in any manner in which the United States marshal of the district" may serve summons. Id. at § 3133(b)(2)(A-B); see also Alban Tractor Co., Inc. v. Hudson Ins. Co., 2013 WL 509151, at *3 (D. Md. Feb. 11, 2013) ("But second-tier subcontractors [such as Kogok] submit their invoices to the subcontractor [such as Bell] rather than the general contractor, and consequently the general contractor has no notice of the outstanding invoices unless such notice is provided by the second-tier subcontractor.").

Recovery in an action brought under 40 U.S.C. § 1331(2) has a condition precedent: the "timely giving of the required notice." General Electric Co. v. H.I. Lewis Construction Co., Inc., 375 F.2d

13

194, 198 (2d. Cir. 1967).  It is true that the Miller Act "should receive a liberal construction to effectuate its protective purposes." <u>United States ex rel. Sherman v. Carter</u>, 353 U.S. 210, 216 (1957).  Indeed, the "principal purpose of the Miller Act is the protection of persons supplying labor and materials to subcontractors on federal construction projects." <u>Honeywell v. A&L Mechanical Contractors</u>, 677 F.2d 383, 386 (4th Cir. 1982). However, "the authority to construe liberally the provisions of the Miller Act is not the authority to contravene the plain language of the statute." <u>Pepper Burns Insulation, Inc. v. Artco Corp.</u>, 970 F.2d 1340, 1343 (4th Cir. 1992) (citing <u>MacEvoy Co. v. United States</u>, 322 U.S. 102, 107 (1944)).  Moreover, the United States Court of Appeals for the Fourth Circuit has "previously exempted from liberal construction the ninety-day limitation on notice provisions." <u>Pepper Burns Insulation, Inc.</u>, 970 F.2d at 1343 (citing <u>Honeywell</u>, 677 F.2d at 386).  If a subcontractor, like Kogok, does not assert a claim against the general contractor and its surety, "the contractor may make final payment to the subcontractor with impunity.  It would be quite unfair to the general contractor to expose it to stale claims of which it had no notice during the ninety day period." <u>Honeywell</u>, 677 F.2d at 386 (citing <u>Noland Co. v. Allied Contractors, Inc.</u>, 273 F.2d 917, 920–21 (4th Cir. 1959)).

14

Any notice under the Miller Act must satisfy the following three requirements: "(1) notice must be given within 90 days of the subcontractor's last work; (2) the notice must 'stat[e] with substantial accuracy the amount claimed'; and (3) the notice must include 'the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.'" Trustees of Heating, Piping and Refrigeration Pension Fund v. Milestone Const. Services, Inc., 991 F. Supp. 2d 713, 718 (D. Md. 2014) (quoting S&G Excavating, Inc. v. Seaboard Sur. Co., 236 F.3d 883, 884 (7th Cir. 2001)).

The law discussed above demonstrates that the notice requirement is strictly interpreted by courts and must be strictly adhered to by a claimant. Further, any such notice must "state with substantial accuracy" the amount claimed and must be received by the contractor within 90 days. Compliance with the notice requirement is a condition precedent to recovery under 40 U.S.C. § 3133(b)(2). With those legal principles in mind, it is clear that Kogok has not complied with notice requirement regarding its claims against the sureties in the reformulated complaint. Kogok provided only one proper notice of its claim under the Miller Act, which was on October 16, 2013. ECF No. 89 Ex. 6. That notice of claim did not contain the PCOs or Pay Applications that Kogok now seeks to recover from the surety defendants. The law is clear that any notice under the Miller Act must "state with substantial

accuracy" the amount claimed.  Here, the notice of claim does not set forth any of the amounts that Kogok now seeks to obtain. Therefore, Turner, as the general contractor, could not be placed on proper notice, which is the primary purpose of the notice requirement.  This Court believes that "[i]t would be quite unfair to the general contractor to expose it to stale claims of which it had no notice during the ninety day period."  Honeywell, 677 F.2d at 386 (internal citation omitted).

Kogok contends that Bell submitted Kogok's PCOs and relevant Pay Applications to Turner.  Because "Turner was on actual notice of the fact that Kogok was not being timely paid for labor and materials," Kogok believes that it complied with the notice requirement.  However, that argument is slightly misguided because similar types of filings have been rejected as proper "notice" under the Miller Act.  See, e.g., American Radiator & Standard Sanitary Corporation v. Northwestern Engineering Co., 122 F.2d 600 (8th Cir. 1941) (finding that invoices submitted by a subcontractor to a contractor "clearly did not constitute written notice" and did not "[state] with substantial accuracy the amount claimed."  Thus, "[t]hey could accordingly not be treated as a substitute for the statute imposed as a condition precedent to any right of action upon the bond."); see also Maccaferri Gabions, Inc. v. Dynateria, Inc., 91 F.3d 1431, 1438 (11th Cir. 1996); Henry Walke Co. v. Van de Riet, 316 F.2d 912 (4th Cir. 1963); Bowden v. Malloy, 239 F.2d

16

572 (9th Cir. 1956).  Kogok asserts that discovery will show that the surety defendants were informed of Kogok's claims, and that Turner had actual knowledge of those claims.  Those assertions were not alleged in the reformulated complaint.  Whether this Court considers those allegations or not, the record speaks for itself: Kogok did not comply with the written notice requirements of the Miller Act.  Its claims under the Pay Applications and PCOs at issue were not listed or discussed in the October 16, 2013 Notice of Claim, which was Kogok's only proper written notice.  Therefore, the surety defendants' motion to dismiss is granted.

### 2. Delay for Damages Claim

In the reformulated complaint, Kogok seeks to recover against the surety defendants for, among other reasons, "delays and impacts to Kogok after October 31, 2013."  ECF No. 81.  Previously, this Court dismissed Kogok's claims for delay damages against the surety defendants.  ECF No. 61 at *13-17.  Following that ruling, this Court granted Kogok's motion to file an amended complaint.  ECF No. 77.  However, this Court explicitly directed Kogok to eliminate any previously dismissed claims in its reformulated complaint.  Id. The facts, issues, and "No Delay for Damages" clause pertaining to the damages for delay claim are identical to those that this Court previously considered and ruled upon.

Viewed under the law of the case doctrine, this Court's prior decision "'should continue to govern the same issues in subsequent

stages in the same case.'" <u>Christianson v. Colt Industries Operating Corp.</u>, 486 U.S. 800, 816 (1988) (quoting <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983)). More specifically, the law of the case doctrine provides that "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." <u>Thomas v. Bible</u>, 983 F.2d 152, 154 (9th Cir. 1993). It serves as a guide to a district court when exercising its discretion. <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983). Generally, a court may depart from applying the doctrine in the following situations: "(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." <u>Bible</u>, 983 F.2d at 155.

To the extent that Kogok is attempting to reassert its damages for delay claim, such a claim must be dismissed for the same reasons this Court previously set forth in its prior memorandum opinion and order. ECF No. 61. In that order, this Court found that the No Damages for Delay clause was clear, valid, and enforceable. <u>Id.</u> Pursuant to that finding, this Court dismissed Kogok's claim because Kogok "expressly agree[d] not to make, and [thereby waived, any and all claims for damages on account of any delay." <u>Id.</u> (quoting the No Damages for Delay clause). Under the

law of the case doctrine, that means Kogok's attempt to reassert that claim again fails. Furthermore, none of the exceptions to that doctrine apply. The facts, law, and circumstances have not changed such that this Court should reconsider its prior ruling on the issue. Further, no manifest injustice would exist if this Court did not reconsider its prior ruling. Therefore, the law of the case doctrine applies. Based on this Court's prior ruling as applied to the case at hand, the surety defendants' motion to dismiss is granted in its entirety.

B.  <u>Bell's Motion for Summary Judgment</u>

In its motion for summary judgment, Bell generally asserts that the express terms of the contract control this dispute and bar the claims asserted in the reformulated complaint against it. ECF No. 86. Bell contends that Kogok's claims arising on or before October 31, 2013 are barred by its Release and Waiver forms. In support of that contention, Bell points out that Kogok executed 26 Release and Waiver forms, wherein Kogok ultimately agreed to release and waive claims that occurred up to October 31, 2013. Further, Bell points out that this Court, in its order granting partial summary judgment, gave identical waivers their full effect. Thus, Bell argues that the same should apply as to the relevant claims by Kogok in its reformulated complaint. Bell asserts that same argument as to the No Damages for Delay clause. Next, Bell believes that its subcontract agreement controls the dispute

between Bell and Kogok, meaning that Kogok's claims fail as a matter of law.  More specifically, Bell notes that the contract provides that payment by the Government is a condition precedent to payment to Kogok by Bell.  Bell believes that, thus far, it has complied with that condition.  Further, as to specific payments that Kogok seeks, Bell contends that it is Kogok's responsibility, pursuant to requests by the Government, to revise its payment applications.  As to Kogok's claims of unjust enrichment and quantum meruit, Bell argues that an express and written agreement governs the dispute and claims of Kogok.  Therefore, any implied contract claims are precluded.  In addition, Bell points to several certifications wherein Kogok allegedly states that the Government, not Bell, is liable for Kogok's claims.

Kogok argues that Bell prevented Kogok from modifying the Release and Waiver forms.  Moreover, Kogok contends that its Release and Waiver forms are unenforceable because they were made unknowingly and involuntarily.  Further, Kogok argues that Bell is misrepresenting the intent of the parties as to the Releases and Waiver forms.  Next, Kogok argues that the No Damages for Delay clause maintains an exception for when Bell recovers delay damages from the Government, which may be allocable to Kogok.  Kogok asserts that Bell may receive those damages soon, and thus the exception may become applicable.  Because of that, Kogok believes it is premature to grant summary judgment.

In addressing the parties' arguments and claims, this Court will first determine if the law of the case doctrine applies to Kogok's claims arising on or before October 31,2013, and to Kogok's claim for damages due to delays. Next, this Court will address Kogok's claims as to its PCOs and Pay Applications. This Court will then consider Kogok's claims for unjust enrichment and <u>quantum meruit</u>.

1. <u>Applicability of the Law of the Case Doctrine</u>

In its motion for summary judgment, Bell asserts that Kogok's claims that arose on or before October 31, 2013, and its damages for delay claim should be dismissed under the "law of the case" doctrine. As stated earlier, the law of the case doctrine provides that "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." <u>Bible</u>, 983 F.2d at 154. Generally, a court may depart from applying the doctrine in the following situations: "(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." <u>Bible</u>, 983 F.2d at 155.

The facts show that Kogok submitted 26 Release and Waiver forms.[4]  Those forms are the same forms that this Court reviewed in its order granting the surety defendants' motion for partial summary judgment.  See ECF No. 61.  More specifically, this Court found the Release and Waiver forms were clear and unambiguous, and accordingly determined that Kogok waived its claims arising on or before October 31, 2013.  Pursuant to the law of the case doctrine and the facts before it, this Court finds no reason to stray from that prior ruling.  Kogok submitted 26 Release and Waiver forms, which explicitly stated that Kogok **"fully and finally release[s] and waive[s] any and all claims"** regarding each respective cost or payment.  Further, those Release and Waiver forms applied to

---

[4]The Release and Waiver forms state the following:

In consideration of the payment herewith made, the Undersigned [Kogok] does **fully and finally release and waive any and all claims**, causes of action, and/or lien rights against the Contractor [Bell] . . . for all costs, expenses, or losses of any nature or description which have arisen or are in any manner related to any aspect of the Work items from the date the Work items originally commenced to the date payment is made hereunder.  This Release and Waiver applies to all claims, disputes, and other matters through the date this payment is made, including all claims for direct and indirect costs, productivity losses, delays, accelerations, ripple effects, field and home office overhead, equipment costs, and all other consequential and incidental costs, losses, and/or damages.

ECF No. 87 Ex. 4. (emphasis added).

certain costs and payments accrued until October 31, 2013.  ECF No.
87 Ex. 3.

Moreover, none of the exceptions to the law of the case
doctrine apply.  The law on the issue of contract interpretation
and applicability of waivers has not changed with respect to this
civil action since this Court's prior ruling.  Further, the facts
and claims asserted as to the claims arising on or before October
31, 2013 against Bell are nearly identical, if not surely
identical, to those that Kogok previously asserted against the
surety defendants.  See ECF Nos. 1 and 81.  Neither a change in the
facts nor a manifest injustice exist so as to justify an alteration
or reconsideration of this Court's prior ruling.  Therefore, the
law of the case doctrine applies.  Based on that doctrine, Kogok's
claims arising on or before October 31, 2013 against Bell must be
dismissed.  Thus, Bell's motion for summary judgment as to such
claims is granted.

As stated earlier, the subcontract agreement between Bell and
Kogok also contained a No Damages for Delay clause.[5]  To the extent

_____

[5]That clause states the following:

NO DAMAGES FOR DELAY:  The Subcontractor [Kogok]
expressly agrees not to make, and hereby waives, any and
all claims for damages on account of any delay,
obstruction, or hindrance for any cause whatsoever,
including but not limited to the aforesaid cause, and
agrees that its sole right and remedy in the case of any
delay, obstruction or hindrance shall be an extension of
time fixed for completion of the Work [unless and to the
extent that Bell recovers delay damages from the Owner

that Kogok appears to seek damages due to delays, the law of the case doctrine applies to such claims. In its prior order, this Court determined that not only was the No Damages for Delay clause clear and unambiguous, but also that West Virginia law likely deems such clauses as enforceable. ECF No. 61 at *16. Thus, this Court granted the surety defendants' motion for partial summary judgment as to Kogok's claims for damages due to delays.

The facts and record before this Court do not justify a departure from that previous finding or ruling for three reasons. First, the same No Damages for Delays clause at issue is the same such clause that this Court analyzed in its prior order. Therefore, as was previously held, the No Damages for Delay clause is clear, unambiguous, and enforceable. Second, although Kogok claims that the Government _may_ pay Bell for delay damages, the facts show that the Government has yet to do so. The No Damages for Delay clause explicitly states that Kogok waives all claims against Bell for damages due to delays. An exception within that clause allows Kogok to recover such damages from Bell if Bell "recovers delay damages from" the Government, and if those damages are directly allocable to Kogok. Thus far, Bell has not recovered such damages from the Government. Further, Kogok asserted this

---

which are directly allocable to the Subcontractor [Kogok]].

ECF No. 87 Ex. 3.

same argument in its response to the surety defendants' motion for partial summary judgment regarding the application of the exception. <u>See</u> ECF No. 34 at *15-16. Bell did not recover delay damages from the Government then, and, according to the record, Bell has not recovered damages now. Therefore, the exception in the No Damages for Delays clause is inapplicable. Third, none of the exceptions to the law of the case doctrine apply. The same facts, circumstances, and law from this Court's prior ruling are equally applicable here. Further, this Court finds that no manifest injustice would result by relying on this Court's prior ruling. Thus, Bell's motion for summary judgment is granted as to any claims for damages due to delays.

      2. <u>Kogok's Claims Regarding the PCOs</u>

As mentioned earlier, Bell argues that Kogok certified that the Government, rather than Bell, is liable for its claims under the PCOs. More specifically, Bell points to two items: the language of the Certified Claim[6] forms for the PCOs and the subcontract agreement between Kogok and Bell. The Certified Claims

---

[6]Those Certified Claim forms state the following:

I hereby certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the minimum contract adjustments for which [Kogok] believes the Government is liable; and that I am duly authorized to certify the claim on behalf of [Kogok].

ECF No. 87 Ex. 8.

forms stated that the requested PCO amounts "accurately reflects the minimum contract adjustments for which [Kogok] believes the Government is liable." ECF No. 87 Ex. 8. Kogok filed a Certified Claim form for each of the PCOs at issue, which totaled 14 such forms. Each form contained the above quoted language stating that Kogok "believes the Government is liable" for the amounts of each respective PCO. In addition to the Certified Claim forms, the subcontract agreement states that the "[Government's] decision regarding [Kogok's] claims shall be final and conclusive as between Bell and [Kogok], and Bell shall have no liability to [Kogok] for such claims." Id. at Ex. 3. Bell believes that Kogok agreed that the Government, rather than Bell, is liable for the amounts under the PCOs based on the language in the Certified Claim forms and subcontract agreement.

Kogok seeks to refute Bell's claim based on two reasons. First, Kogok argues that the Certified Claim forms do not grant Bell impunity, despite the language quoted above. Kogok first argues that the Certificated Claim forms were only submitted because Bell requested it do so and to allow Bell or Turner to recover the PCO amounts from the Government. Kogok directs the Court to the following language contained in the forms: "This claim, representing uncompensated costs incurred by Kogok, is being submitted . . . to allow Bell to seek compensation from Turner for these costs [the PCOs amount], and/or to allow Turner to seek

compensation from the Government for these costs [the PCOs amount]." Kogok next points to the following statement contained within all of the Certified Claim forms: "Nothing herein shall be deemed a waiver of Kogok's rights and remedies to recover the amounts claimed herein under Kogok's subcontract agreement with Bell and/or from the Miller Act sureties under their payment bonds, and/or as otherwise allowed by law." ECF No. 87 Ex. 8. Kogok contends that the above language does not completely absolve Bell of liability for the amounts under the PCOs.

When reading and interpreting contract provisions, the court's purpose is to give full force and effect to the expressed or implied intentions of the contracting parties, if such can be discerned. <u>Truong Xuan Truc v. United States</u>, 212 Ct. Cl. 51, 66, 1976 WL 905 (1976) (quoting <u>Massachusetts Port Auth. v. United States</u>, 456 F.2d 782, 784, 197 Ct. Cl. 721, 726 (1972)); <u>see also</u> <u>SCM Corp. v. United States</u>, 675 F.2d 280, 283, 230 Ct. Cl. 199, 203 (1982); <u>Honeywell Inc. v. United States</u>, 661 F.2d 182, 186, 228 Ct. Cl. 591, 596 (1981); <u>Dynamics Corp. of America v. United States</u>, 389 F.2d 424, 429, 182 Ct. Cl. 62, 72 (1968). Moreover, West Virginia law provides that "a valid written agreement using plain and unambiguous language is to be enforced according to its plain intent and should not be construed." <u>Toppings v. Rainbow Homes, Inc.</u>, 490 S.E.2d 817, 822 (W. Va. 1997); <u>see also</u> Syl. Pt. 2, <u>Orteza v. Monongalia County General Hospital</u>, 318 S.E.2d 40 (1984);

Syl. Pt. 1, <u>Cotiga Development Co. v. United Fuel Gas Co.</u>, 128 S.E.2d 626 (W. Va. 1962). In determining that intent, a court "must view the instrument as a whole, attributing to each word its normal or customary meaning, unless some indication exists that the parties intended to use words in a special technical sense." <u>Nat'l Cas. Co. v. Lockheed Martin Corp.</u>, 415 F. Supp. 2d 596, 601 (4th Cir. 2006); <u>see</u> <u>Dan Ryan Builders, Inc. v. Nelson</u>, 737 S.E.2d 550 (W. Va. 2012).

The parties do not dispute the clarity or validity of the at issue provisions in the Certified Claim forms or the above quoted clause of the subcontract agreement. Therefore, this Court only has to interpret those provisions and determine their application. <u>See</u> <u>Bourke v. Dun & Bradstreet Corp.</u>, 159 F.3d 1032, 1036 (7th Cir. 1998) ("A contract is not rendered ambiguous simply because the parties do not agree on the meaning of its terms . . . . Where the contract is susceptible to only one meaning . . ., the court may interpret the contract for itself."). Based on the plain language of the Certified Claim forms and subcontract agreement, Bell is not liable for the PCOs at issue. Kogok submitted at least 14 Certified Claim forms, wherein Kogok agreed that it "believes the Government is liable" for those amounts. ECF No. 87 Ex. 8. Although the forms state that Kogok does not waive its rights to remedies under the subcontract agreement, Kogok has no remedies for recovery regarding the PCOs. The subcontract agreement states that

28

regarding disputed claims between Kogok and the Government, the "[Government's] decision regarding [Kogok's] claims shall be final and conclusive as between Bell and [Kogok], and Bell shall have no liability to [Kogok] for such claims." Id. at Ex. 3. Under the Certified Claim forms, Kogok states that the Government, not Bell, is liable for the disputed amounts. That means the PCOs are disputed claims between Kogok and the Government, not between Bell and Kogok. The subcontract agreement explicitly provides that "Bell shall have no liability to [Kogok]" for claims between the Government and Kogok. Whether it is the explicit language of the Certified Claim form, which Kogok executed at least 14 of such forms, or the language of the subcontract agreement, Bell is not liable for the amounts under the PCOs at issue.

To the extent that Kogok contends it was forced to comply with requests by Bell and Turner in executing the Certified Claim forms, that contention is equally unfounded. The record shows no foul play by either party during the formation or execution of the subcontract agreement and Certified Claim forms. Therefore, the parties are bound by an undisputedly valid and enforceable contract. Kogok made the decision to execute and submit its Certified Claim forms, as well as the subcontract agreement. The language and its application in this civil action could not be more clear. Based on the plain language of both the subcontract

agreement and Certified Claim forms, Bell's motion must be granted as to Kogok's claims regarding the PCOs at issue.

3. <u>Kogok's Claims Regarding the Pay Applications</u>

In addition to the PCOs, Kogok also submitted Payment Applications 43 through 46. In the reformulated complaint, Kogok agues that Bell breached its subcontract agreement by refusing to pay the amounts under those Payment Applications. More specifically, Kogok asserts that Bell repeatedly rejected Kogok's disputed Payment Applications and ordered Kogok to provide revised Payment Applications. ECF No. 81.

Bell contends that those allegations are false. In particular, Bell points to the deposition of Bell's Project Manager, Pat Nugent. In that deposition, it appears that the Government provided Kogok with comments about those Payment Applications, and that the Government requested Kogok to revise those amounts. ECF No. 87 Ex. 10. Further, it appears that those comments and revisions are not "final." Rather, Mr. Nugent states that Kogok may review its Payment Applications and associated comments with the Government. Further, the subcontract agreement states that Bell must pay Kogok after the Government pays Bell for the work that Kogok performed. ECF No. 87 Ex. 3.

Although Kogok claims that Bell rejected its Payment Applications and that Bell is in breach of the subcontract agreement, that argument appears slightly misguided. Under the

terms of the subcontract agreement, Kogok receives final payment
after Bell receives payment from the Government for Kogok's work.
As stated under the subcontract agreement, "It is expressly
understood that payment by [the Government] to Bell for
satisfactory work by [Kogok] shall be a condition precedent to
payment by Bell to [Kogok]." ECF No. 87 Ex. 3. Further, it
appears that the disputed Payment Applications received comments
and requests for revisions by the Government. ECF No. 87 at *14.
This Court does not view the conduct by Bell as a rejection, such
that it is in breach of the subcontract agreement. In its response
to Bell's motion for summary judgment, Kogok does not address or
argue against Bell's assertion as to the current status of the
Payment Applications. Therefore, it does not appear that the
current status and facts about the handling of the Payment
Applications is in dispute. Based on the record before it and the
parties' filings, Bell's motion is granted as to Kogok's claims
regarding the Payment Applications at issue.

    4. <u>Remaining Counts of Unjust Enrichment and Quantum Meruit</u>

    Under Counts XI and XII of the reformulated complaint, Kogok
asserts claims for unjust enrichment and recovery in <u>quantum meruit</u>
against Bell. However, as Bell correctly points out, "An express
contract and an implied contract, relating to the same subject
matter, cannot co-exist." <u>Case v. Shepherd</u>, 84 S.E.2d 140, 144 (W.
Va. 1954). Phrased another way, quasi-contract claims, like unjust

enrichment or <u>quantum meruit</u>, are unavailable when an express agreement exists because such claims only exist in the absence of an agreement. <u>Wilson v. Stratosphere Corp.</u>, 371 F. App'x 810, 811-12 (9th Cir. 2010); <u>Sea Byte, Inc. v. Hudson Marine Mgmt. Servs., Inc.</u>, 565 F.3d 1293, 1301 (11th Cir. 2009); <u>Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.</u>, 448 F.3d 573, 586 (2d Cir. 2006) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A "quasi contract" only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment . . . . Briefly stated, a quasi-contractual obligation is one imposed by law **where there has been no agreement or expression of assent, by word or act, on the part of either party involved**. . .") (emphasis in original); <u>Karna v. BP Corp. N. Am.</u>, 11 F. Supp. 3d 809, 820 (S.D. Tex. 2014) ("[A] plaintiff cannot recover in <u>quantum meruit</u> when there is an express contract governing the goods or services at issue."); <u>Plesha v. Ferguson</u>, 725 F. Supp. 2d 106, 112 (D.D.C. 2010) ("Because both promissory estoppel and unjust enrichment presuppose that an express, enforceable contract is absent, District of Columbia courts generally prohibit litigants from asserting these claims when there is an express contract that governs the parties'

conduct."); <u>Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP</u>, 440 F. Supp. 2d 1184, 1197 (D. Nev. 2006) ("An unjust enrichment claim is 'not available when there is an express, written contract, because no agreement can be implied when there is an express agreement.'"); <u>Integral Control Sys. Corp. v. Consol. Edison Co. of New York</u>, 990 F. Supp. 295, 303 (S.D.N.Y. 1998). Here, an enforceable, express, and written agreement exists, which is the subcontract agreement. ECF No. 87 Ex. 3. That agreement governs the parties. Therefore, Kogok's claims for unjust enrichment and <u>quantum meruit</u> cannot proceed.

C.   <u>Kogok's Motion to Amend the Scheduling Order</u>

As mentioned earlier, Kogok filed a motion to amend the scheduling order, wherein it seeks to extend the deadline for discovery. ECF No. 71. However, both the surety defendants' motion to dismiss and Bell's motion for summary judgment are granted. Therefore, no extension for discovery is necessary, and, thus, Kogok's motion to amend the scheduling order must be denied as moot.

## V.   <u>Conclusion</u>

For the reasons set forth above, defendants Travelers Casualty and Surety Company of America, Federal Insurance Company, Fidelity & Deposit Company of Maryland, Zurich American Insurance Company, Liberty Mutual Insurance Company, and the Continental Insurance Company's motion to dismiss (ECF No. 88) is GRANTED. Further,

defendant Bell Constructors, LLC's motion for summary judgment is GRANTED.  Finally, plaintiff Kogok Corporation's motion to amend the scheduling order (ECF No. 71) is DENIED AS MOOT.  Accordingly, it is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    September 24, 2015


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE